Becky BLAESING, Plaintiff
and Appellee,

v.

Charles E. SYVERTSON, Defendant
and Appellant.

Civ. No. 940407.

Supreme Court of North Dakota.

May 31, 1995.

Crystal Webb Wosick, Asst. State's Atty.,
Fargo, for plaintiff and appellee.

Charles E. Syvertson, pro se.

VANDE WALLE, Chief Justice.

Charles Edward Syvertson appealed an order of the district court, East Central Judicial District, denying his request for review of its confirmation of a referee's findings of fact and conclusions of law which found him guilty of civil contempt of court for failure to appear at a child support hearing. Because the district court misused its contempt powers, we reverse.

Syvertson was ordered to pay child support in a judgment dated July 12, 1989. Since that time his obligation of support has been the subject of many hearings and has been amended several times. All of the court documents containing conclusions of law regarding Syvertson's child-support obligation have contained a requirement that Syvertson notify the child support unit and the district court within ten days of any change in his residence or employment.

On April 28, 1994, Syvertson was served with a warrant of attachment and brought into the custody of the district court. On May 3, 1994, by agreement of the parties, the judicial referee continued to September 22, 1994, the hearing originally scheduled for April 28. Syvertson did not appear at the September hearing. At the time, he was incarcerated at the North Dakota State Penitentiary.

On October 7, 1994, the clerk of the district court issued an income-withholding order to the state penitentiary, garnishing Syvertson's earnings. On October 27, 1994, the judicial referee issued findings of fact and conclusions of law, holding Syvertson in contempt of court for not appearing at the hearing of September 22. The first of the referee's conclusions of law stated: "That the Defendant is guilty of Civil Contempt of Court for failing to comply with the Order of this Court dated May 3, 1994 in that the Defendant did not appear in person or by counsel as so Ordered."

On October 31, 1994, the district court issued a warrant of attachment directing the sheriff to bring Syvertson before the court to answer for his failure to appear. On November 3, 1994, the district court confirmed the referee's findings of fact and conclusions of

law. The "Order of Confirmation" was issued by the same district court judge who sentenced Syvertson to the penitentiary.

In a letter dated November 28, 1994, Syvertson asked the court for a review of the "facts and findings on fa[i]lure to appear." Specifically, he asked the court to "allow [him] 72 working hours after release to make a court appe[a]rance acceptable to the court." On December 16, 1994, the district court denied the request for review and reconfirmed the referee's findings of fact and conclusions of law. The court stated:

> "The Defendant may have a reasonable explanation for his failure to appear if he was incarcerated at the time. However, that is no excuse for his failure to pay child support. Garnishment of his pay at the North Dakota State Penitentiary is his result of his failure to pay child support. The Defendant will have the opportunity upon completion of his incarceration to be returned to Cass County in the custody of the Sheriff and to personally appear before the Court."

■ The complainant has the burden of showing that a defendant committed contemptuous acts and the defendant's burden is to show that the acts were legally justified. *E.g., Matter of Contempt of Grajedas,* 515 N.W.2d 444 (N.D.1994). "A trial court's decision that a remedial contempt has occurred will not be disturbed on appeal unless the court abused its discretion." *Id.* at 448. A trial court abuses its discretion if it acts arbitrarily, unconscionably, or unreasonably. *Id.*

North Dakota's contempt laws have been consolidated in chapter 27–10, NDCC. 1993 N.D.Laws ch. 89. *See also* Wayne R. Johnson, Note, *North Dakota's New Contempt Law: Will It Mean Order In The Court?,* 70 N.D.L.Rev. 1027 (1994). Although contempt powers are inherent to courts, the legislature may limit, and has limited, the "class[es] of people to which contempt orders apply[.]" Johnson, Note, *supra* at 1030–31; NDCC § 27–10–01.1; *DeVore v. DeVore,* 393 N.W.2d 739 (N.D.1986). Chapter 27–10, NDCC, "was intended to incorporate the analysis used by the United States Supreme Court and this court for determining the constitu-

tional safeguards that attach to contempt proceedings." *State v. Mertz,* 514 N.W.2d 662, 666 n. 3 (N.D.1994).

■ Any "court of record of this state may impose" remedial or punitive sanctions for contempt of court. NDCC § 27–10–01.2. "Intentional disobedience, resistance, or obstruction of the authority, process, or order of a court or other officer including a referee" or "[i]ntentional refusal of a witness to appear ... after being ordered to do so by the court" may be contempt of court. NDCC § 27–10–01.1(1)(c), (d). There is no evidence in the record to support a finding that Syvertson purposely incurred a sentence to the penitentiary in order to avoid appearing at the September hearing. Thus, his inability to appear could hardly be regarded as intentional. The "Order of Confirmation" was entered by the same judge who sentenced Syvertson to the penitentiary. The trial court's order indicates its knowledge that Syvertson's incarceration made it impossible for him to appear at the September 22 hearing. Because Syvertson's failure to appear was not intentional, the contempt statutes, chapter 27–10, NDCC, do not authorize the district court's contempt holding.

■ Inability to comply with a court order is a defense to contempt of court. *E.g., DeVore, supra. See also Mertz, supra* at 666 [recognizing a remedial sanction for contempt as one in which the defendant holds "the prison keys in his own pocket"]. Syvertson was unable to appear in district court in Cass County because he was incarcerated in Bismarck. Thus, even if the contempt holding were permitted by the contempt statutes, Syvertson would have a valid defense.

The trial court's order of refusal evidences an understandable concern about Syvertson's failure to pay child support and its desire to have Syvertson appear in court on that matter when released from the penitentiary. However, the contempt charge is not for failure to pay child support, nor is it for failure to notify the court within ten days of a change in residence and employment status; it is for failure to appear at the September 22 hearing. We recognize that there are constitutional safeguards that attach to contempt

proceedings. *Mertz, supra.* Therefore, regardless of the trial court's positive motives, it is unreasonable to continue to hold Syvertson in contempt of court for failing to appear at the September 22, 1994, hearing.

We reverse.

SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.